# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | No. 08-079 |
| JIMIYU VERNON | SECTION: I |

## ORDER AND REASONS

Before the Court is a *pro se* motion[1] to vacate, set aside, or correct sentence pursuant to

28 U.S.C. § 2255 filed by defendant, Jimiyu Vernon ("Vernon"). For the following reasons,

defendant's motion is **DENIED** and defendant's petition for post-conviction relief is

**DISMISSED WITH PREJUDICE**.

## BACKGROUND

On June 5, 2008, Vernon pled guilty to an indictment charging him with possession with

the intent to distribute fifty grams or more of cocaine base and a quantity of cocaine

hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1), 841 (b)(1)(A)

and 841(b)(1)(C), and with possessing a firearm in furtherance of a drug trafficking offense, in

violation of Title 18, United States Code, Section 924(c)(1)(A).[2] At the re-arraignment hearing,

the government introduced into evidence a factual basis, signed by Vernon, stating that law

---

[1]Rec. Doc. No. 34.

[2]Rec. Doc. Nos. 4, 15.

1

enforcement officials executing a search warrant on Vernon's residence and vehicle recovered

over 50 grams of cocaine base, a quantity of cocaine hydrochloride, and a firearm.[3] In the factual

basis, Vernon also admitted that he possessed the seized firearm in furtherance of his drug

trafficking activities.[4]

Prior to entering his guilty plea, Vernon executed a plea agreement wherein he agreed to

plead guilty to the two-count indictment and truthfully cooperate with law enforcement. The

government agreed not to charge Vernon with any other controlled substances violations that he

"may have committed prior" to his arrest.[5] The government also agreed to inform the court, prior

to sentencing, of any cooperation that the defendant provided to law enforcement.[6] Additionally,

Vernon agreed to waive his right to appeal his conviction and/or his sentence as set forth in the

plea agreement:

> Except as otherwise provided in this paragraph, the defendant hereby expressly
> waives his rights to appeal from his conviction and/or his sentence, including but
> not limited to any appeal rights conferred by Title 28, United States Code,
> Sections 1291, and by Title 18, United States Code, Section 3742. The defendant
> further waives his right to contest his conviction and/or his sentence in any
> collateral proceedings, including proceedings brought under Title 28, United
> States Code, Section 2241 and Title 28, United States Code, Section 2255, on any
> ground, except that the defendant may bring a post conviction claim if the
> defendant establishes that ineffective assistance of counsel directly affected the
> validity of this waiver of appeal and collateral challenge rights or the validity of
> the guilty plea itself. Subject to the foregoing, the defendant reserves the right to
> bring a direct appeal of any sentence imposed in excess of the statutory
> maximum.[7]

---

[3]Rec. Doc. No. 18, p. 1-3.

[4]*Id*. at 3.

[5]Rec. Doc. No. 17, p. 1.

[6]*Id*. at 3-4.

[7] *Id*. at 2.

On September 11, 2008, Vernon was sentenced to the mandatory minimum sentence of 120 months as to Count 1 and the mandatory minimum sentence of 60 months as to Count 2, such sentences to be served consecutively.[8]

On September 22, 2008, the Clerk of Court received Vernon's *pro se* notice of appeal and application to proceed without prepayment of fees and affidavit.[9] On December 3, 2008, U.S. Magistrate Judge Alma Chasez denied the defendant's request to appeal *in forma pauperis* "[b]ecause defendant fail[ed] to identify any non-frivolous grounds for appeal."[10] The order noted that Vernon had waived his right to appeal as part of his plea agreement, with the exception of the imposition of a sentence in excess of the statutory maximum.[11] In addition, the court observed that Vernon's privately retained defense counsel had not moved to withdraw.[12]

A December 9, 2008 letter from the Clerk of Court at the U.S. Fifth Circuit Court of Appeals informed Vernon that his motion for leave to proceed in forma pauperis had been denied and that he had thirty days to pay the filing and docketing fee to the clerk of the district court or to apply for pauper status with the Fifth Circuit.[13] The letter provided Vernon with an affidavit,

---

[8]Rec. Doc. No. 24.

[9]Rec. Doc. Nos. 25, 26.

[10]Rec. Doc. No. 32.

[11]*Id.* at n. 1.

[12] Rec. Doc. No. 32.

[13]Rec. Doc. No. 38, Gov's. Ex. B. The letter from the Clerk of Court states, in pertinent part:
　　We have docketed the appeal as shown above, and ask you to use the case number above in future inquiries.
　　The District Court has denied your motion for leave to proceed in forma pauperis. [Y]ou have 30 days from that date to pay the $445.00 filing and docketing fees to the **clerk of the district court**, or to apply for in forma pauperis status with this Court. If it is your intent to file a

along with instructions, to complete and submit along with his pauper application, failing which his appeal would be dismissed.[14] On January 14, 2009 the Fifth Circuit issued an order dismissing the appeal for want of prosecution because Vernon had failed to timely order the transcript, failed to make financial arrangements with the court reporter, and failed to pay the docketing fee.[15]

Vernon filed a motion on July 6, 2009, maintaining that his conviction and sentence should be vacated pursuant to 28 U.S.C. § 2255 because he received ineffective assistance of counsel.[16] On September 14, 2009, Vernon filed a reply to the government's opposition.[17]

Vernon contends that his convictions should be vacated because: (1) counsel failed to properly advise Vernon of the potential sentence that might result from the plea agreement; (2) counsel failed to properly investigate and present evidence at sentencing that Vernon was innocent of the firearm charge; (3) counsel failed to allow Vernon and his wife to testify at sentencing; (4) counsel failed to file any objections to the pre-sentence investigation ("PSI"); (5)

---

motion for in forma pauperis status pleas complete the enclosed affidavit and submit it along with your motion. If you do not, we will dismiss your appeal, see 5TH CIR. R. 42.3.

      The District Court also denied you transcripts at government expense. You are required to order the necessary transcripts and make financial arrangements with the court reporter (s). The completed transcript order form(s) or your motion for transcripts at government expense are due in our court within 15 days of the date of this notice.

      If it is your unequivocal intent to proceed pro se in this appeal please advise this court within the time allowed for paying the docketing fee(s). If you are intending to retain appellate counsel or file a motion for appointment of counsel in our court please notify us of the name of your retained attorney or submit your motion for appointment of counsel within the same designated time frame.

*Id.*

[14] *Id.*

[15] Rec. Doc. No. 33.

[16] Rec. Doc. No. 34.

[17] Rec. Doc. No. 42.

the Court denied Vernon the right of allocution; (6) counsel failed to file Vernon's direct appeal; (7) counsel failed to inform Vernon of his rights to appeal; (8) counsel failed to discuss the process of appeal; (9) counsel failed to communicate with Vernon about possible issues to be raised on appeal; (10) counsel deprived Vernon of his direct appeal by failing to withdraw after Vernon's conviction; (11) counsel's ineffective assistance caused Vernon's lack of notice of appeal deadlines; and (12) counsel provided ineffective assistance on appeal.

## LAW AND ANALYSIS

### I. Overview of § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255 (a). *See also Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468, 470, 7 L. Ed. 2d 417, 420 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction." *United States v. Hayman*, 342 U.S. 205, 222, 72 S. Ct. 263, 274, 96 L. Ed. 232 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing

*Andrews v. United States,* 373 U.S. 334, 339, 83 S. Ct. 1236, 1238, 10 L. Ed. 2d 383 (1963)).

Pursuant to § 2255, the Court must grant the defendant a hearing to determine the issues and

make findings of fact and conclusions of law unless "the motion, files, and records of the case

conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974

F.2d 39, 41 (5th Cir. 1992). If the court determines that the prisoner is entitled to relief "[it]

shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or

grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## II. Ineffective Assistance of Counsel

The standard for judging the performance of counsel was established by the United States

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United

States Supreme Court established a two-part test for evaluating claims of ineffective assistance

of counsel that requires the petitioner to prove (1) deficient performance and (2) resulting

prejudice. *Strickland*, 466 U.S. at 697. In order to satisfy the first *Strickland* prong, "the

defendant must show that counsel's representation fell below an objective standard of

reasonableness." *Id*. at 688. Second, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id*. at 694; see also *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

A "reasonable probability" is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. A defendant must satisfy both prongs of the *Strickland* test in order

to be successful on an ineffective assistance claim. See *Strickland*, 466 U.S. at 697.

On federal habeas review, scrutiny of counsel's performance "must be highly

deferential," and the Court will 'indulge a strong presumption that strategic or tactical decisions

made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 701 (2002) (citing *Strickland*, 466 U.S. at 689). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689.

The second prong of the *Strickland* test looks to the prejudice effected by counsel's deficient performance. This requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687). "[T]he defendant must show that counsel's errors were prejudicial and deprived defendant of a 'fair trial, a trial whose result is reliable.'" *United States v. Baptiste*, No. 98-207, 2007 U.S. Dist. LEXIS 21388, at *11 n.6 (E.D. La. Mar. 26, 2007) (Engelhardt, J.) (quoting *Strickland*, 466 U.S. at 687). "This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors." *Id.*

In *Hill v. Lockhart*, the United States Supreme Court held that the two-part *Strickland*

standard was applicable to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  With respect to the prejudice prong of *Strickland*, defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (quoting *Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370).

### III. Waiver of § 2255 Rights

The Fifth Circuit has held that a defendant may waive his right to post-conviction relief pursuant to 28 U.S.C. § 2255 if the waiver was knowing and voluntary. *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002)(citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  For the waiver to be knowing and voluntary, the defendant must know that he had a right to seek collateral review and that he was giving up that right. *See United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994)(discussing waiver of appellate rights).

A claim of ineffective assistance of counsel may survive a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself." *White,* 307 F.3d at 343.[18] A claim of ineffective assistance of counsel at any other stage, such as sentencing, cannot overcome a knowing and voluntary plea or waiver. *Id.* at 341-43; *United States v. McCray*, No. 07-194, 2009 WL 1380304, at *4 (E.D. La. May 13, 2009)(Barbier, J.); *United States v. James*, No. 05-059, 2007 WL 2323385, at *6 (E.D. La. Aug. 10, 2007)(Vance, J.)("If a petitioner cannot

---

[18] Additionally, a waiver cannot be enforced to bar review of a sentence that exceeds the statutory maximum or where the defendant correctly contends that the indictment clearly does not state an offense or where the factual basis for the plea agreement does not show that the defendant committed an offense. *White*, 307 F.3d at 341, n.2; *United States v. Hollins*, 97 Fed. App'x 477, 479 (5th Cir. 2004).

establish that ineffective assistance of counsel rendered his plea unknowing or involuntary, then his waiver bars him from challenging other stages of the proceedings against him."). Therefore, as long as the plea and the waiver themselves were knowing and voluntary and the contested issue is the proper subject of waiver, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *White,* 307 F.3d at 343-44.

## A. Validity of the Guilty Plea

Vernon claims that his counsel failed to properly advise him of the applicable sentences he might receive as a result of his guilty plea. In his motion to vacate, Vernon states that counsel met with him "just five minutes before my sentencing,[19] and told me specifically, 'If you sign this plea agreement, you are looking at 15 years or below, and if you don't, you're looking at 15 – 20.'"[20] Vernon admits that his counsel's statements were "factually correct," but asserts that had he "been properly informed of what [he] was going to receive by signing the plea agreement, [he] would have gone to trial."[21]  Vernon's reply to the government's opposition is not consistent with his original motion, stating that before his guilty plea, his lawyer told him he was facing "33-50 months."[22]

_____

[19] Vernon asserts that this conversation took place before "sentencing." *Id.* However, the Court will presume he meant prior to his re-arraignment, as he signed his plea agreement months before sentencing. Rec. Doc. No. 34, p. 8.

[20] Rec. Doc. No. 34, p. 8.

[21] *Id.*

[22] Rec. Doc. No. 42, p. 12. In support of this claim, Vernon alleges, "the PSI indicate[s] a lesser prison term than that imposed by the Court." *Id.*  In fact, the PSI is consistent with the sentences the Court gave Vernon, stating:
> Based on a total offense level of 27 and a criminal history category of I, the guideline range for imprisonment is 70 to 87 months, as to Count 1. However, as Count 1 involves a minimum mandatory sentence of 120 months, the guideline range is restricted to 120 months, pursuant to 5G1.1(c)(2). As to Count 2, a sentence of 60 months is mandatory and must run consecutive with Count 1.

Presentence Investigation Report, p. 14.

For a guilty plea "[t]o be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" *Hernandez*, 234 F.3d at 255 (citing *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23L. Ed. 274 (1969)). "The defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur." *Id. See also United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)("Due process requires that a guilty plea be a knowing and voluntary act; the defendant must be advised of and understand the consequences of the plea."). With respect to sentencing, a defendant must only know the maximum term of imprisonment and fine that he faces. *Pearson*, 910 F.2d at 223. "'As long as [the defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *Id.* (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).

Even if counsel incorrectly represented the applicable sentences Vernon could receive, the record demonstrates the knowing and voluntary nature of Vernon's guilty plea. Vernon signed the June 5, 2008 plea agreement, which acknowledged that:

> The defendant has agreed to plead guilty to Count 1 of the Indictment in which the defendant is charged with possession with the intent to distribute fifty grams or more of cocaine base ("crack") and cocaine hydrochloride, both Schedule II drug controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and (b)(1)(C).
> The defendant has also agreed to plead guilty to Count 2 of the indictment in which the defendant is charged with possessing a firearm in the furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).
> ...
> The defendant understands that the penalty defendant may receive should

his plea of guilty to Count 1 of the indictment be accepted is a mandatory minimum of ten (10) years and a maximum of life imprisonment and/or a fine of up to four million dollars, pursuant to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

The defendant further understands that the penalty defendant may receive should his plea of guilty to Count 2 be accepted is a mandatory minimum sentence of five (5) years and a maximum of life in prison and/or a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000.00 dollars, pursuant to Title 18, United States Code, Section 924(c)(1)(A). **This sentence must be served consecutively to any other sentence that the defendant receives**.[23]

During the re-arraignment hearing, the Court also advised Vernon of the maximum possible penalties he faced with respect to counts 1 and 2, the mandatory minimum sentences imposed by 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841 (b)(1)(C) and 18 U.S.C. § 924(c)(1)(A), and the fact that these sentences would run consecutively. Vernon confirmed that he understood that the Court could impose the maximum possible sentences as explained to him.[24] Vernon

---

[23]Rec. Doc. No. 17, pp. 1- 2 (emphasis in original).

[24] At the re-arraignment, the Court confirmed Vernon's understanding of the penalties he faced as follows:

> **THE COURT:** Mr. Vernon, the maximum possible sentence that could be imposed on you in the event of a conviction with respect to Count 1, either upon a plea of guilty or after a trial at which you are found guilty, is a mandatory minimum term of no less than 10 years imprisonment and a maximum term of no more than life in prison ... a fine of no more than $4 million, and a term of supervised release of no less than five years.
> ...
> The maximum possible sentence that could be imposed on you in the event of a conviction with respect to Count 2, either upon a plea of guilty or after a trial at which you are found guilty, is: A mandatory minimum of no less than five years imprisonment and a maximum term of no more than life imprisonment, to run consecutive to the sentence that may be imposed for the crime charged in Count 1; a fine of no more than $250,000; and a term of supervised release of no more than five years. The Court is also required to impose on you in the event of a conviction, either upon a plea of guilty or after a trial at which you are found guilty, a special assessment in the amount of $200, which is $100 per count. Now, do you fully understand if I accept your guilty plea, I could impose the maximum possible sentences I just related to you?
> **THE DEFENDANT:** Yes, sir.
> **THE COURT:** Have the sentencing guidelines applicable to your case and the

confirmed that he understood that any discussions with his attorney regarding sentencing guidelines were merely rough estimates and that the Court was not bound by such discussions.[25] The Court explained the rights that Vernon was waiving by pleading guilty. Vernon stated that he understood his rights and that he wanted to waive them by pleading guilty.[26]

_____

mandatory minimums been explained to you by your counsel?
**THE DEFENDANT:** Yes, sir.
...
**THE COURT:** Now, do you fully understand if I accept your guilty plea, I could impose the maximum possible sentences I just related to you?
**THE DEFENDANT:** Yes, sir.
Rec. Doc. No. 36, pp. 10-12.

[25]*Id.* at 19.
**THE COURT:** Do you understand that any discussions with your attorney or anyone else regarding sentencing are merely rough estimates and that the Court is not bound by those discussions?
**THE DEFENDANT**: Yes, sir.
*Id.*


[26] Rec. Doc. No. 36, p. 13-15.
**THE COURT**: I will now explain the rights that by pleading guilty you waive and give up. You have the right to be represented by counsel, either one you retained or one appointed for you by the Court. You have the right to remain silent. You would be entitled to a speedy and public trial by a jury of 12 or by the judge if a jury trial is waived. Before you could be found guilty, the government would be required to prove at trial by competent evidence beyond a reasonable doubt the facts charged in the indictment.
At trial, the government would be required to confront you with witnesses upon whose testimony it relies to obtain a conviction, and you would have the right to cross-examine those witnesses. At trial, you would be presumed innocent until such time, if ever, the government established your guilt by competent evidence beyond a reasonable doubt. Before trial, you would be entitled to compulsory process to call witnesses. If you are tried by a jury, all 12 jurors must agree on your guilt before you could be found guilty. If you are found guilty, you would have a right to appeal your conviction as well as your sentence.
Do you understand if I accept your guilty plea, you would not be entitled to a trial and the government would not be required to prove you're guilty?
**THE DEFENDANT**: Yes, sir.
**THE COURT**: Do you understand if you plead guilty and I accept your guilty plea, you would be waiving and giving up your right to trial and all the other rights I just explained to you?
**THE DEFENDANT**: Yes, sir.
**THE COURT**: Do you understand if I accept your guilty plea, there would be no further trial, and I will simply enter a judgment of guilty and sentence you on the basis of your guilty plea?
**THE DEFENDANT**: Yes, sir.
**THE COURT**: Are you willing to waive and give up your right to trial by a jury or judge?
**THE DEFENDANT**: Yes, sir.
*Id*. at 13-15.

Notwithstanding Vernon's contentions of deficient performance by his counsel, it is clear that Vernon understood the minimum and maximum sentences that he faced as well as the rights that he was waiving. Vernon confirmed his understanding in a signed plea agreement and again in statements to the Court before the Court accepted his guilty plea. *See Wilkes*, 20 F.3d at 653 ("Solemn declarations in open court carry a strong presumption of verity."). Accordingly, even of his counsel incorrectly represented the range of applicable sentences faced by the defendant if he pled guilty, as opposed to maintaining his not guilty plea, the record shows that Vernon's guilty plea was knowing and voluntary.

## B. Validity of Waiver

The record likewise demonstrates that Vernon knowingly and voluntarily agreed to waive his right to collateral review pursuant to 28 U.S.C. § 2255. Vernon signed a written plea agreement, acknowledging his agreement to waive his right "to contest his conviction and/or his sentence in any collateral proceeding, including proceedings brought under ... Title 28, United States Code, Section 2255."[27] The agreement set forth the limited grounds on which Vernon reserved his rights to review.[28] At Vernon's rearraignment hearing, the Court explained the terms of the waiver and Vernon indicated his understanding and agreement with the terms, as follows:

> **THE COURT**: Mr. Vernon, as part of your plea agreement, you waive your right to appeal your conviction and/or sentence. You further waive your right to contest your conviction and/or sentence in any other collateral proceeding. You have reserved the right, however, to bring a direct appeal of any sentence imposed in excess of the statutory maximum. You may also challenge your conviction and/or sentence if you can show you received ineffective assistance of counsel and the claimed ineffective assistance directly affected the validity of your plea or the waiver of appeal.

---

[27] Rec. Doc. No. 17, p. 2.

[28] *Id.*

A waiver of appeal on a plea agreement would not be enforced to bar a direct appeal where the indictment did not state an offense and/or where the factual basis for your plea did not show the commission of an offense. Otherwise, you will have no right to appeal your conviction or your sentence.

Now, you say you understand what the U.S. attorney outlined and that is your understanding of the plea agreement in this case; is that correct?

**THE DEFENDANT:** Yes, sir.[29]


## C. Effect of Waiver

In light of Vernon's voluntary and knowing guilty plea and his knowing and voluntary waiver of his appellate and post conviction rights, several of the claims that he asserts in this § 2255 motion are barred. Although Vernon alleges ineffective assistance of counsel, several claims do not relate directly to the validity of his guilty plea or the waiver itself. Instead, claims that counsel failed to properly investigate and present evidence at sentencing that Vernon was innocent of the firearm charge, that counsel failed to allow Vernon and his wife to testify at sentencing,[30] that counsel failed to file any objections to the PSI, and that the Court denied

---

[29] Rec. Doc. No. 36, p. 18-19.

[30] Even if Vernon's wife had testified at sentencing that the firearm found in the car was hers, it is hard to imagine that her statement would carry much weight in light of the plea agreement and Vernon's testimony at his rearraignment. Vernon signed a factual basis attesting that, "[b]y pleading guilty to this indictment, the defendant acknowledges that he possessed the firearm described above in furtherance of his drug trafficking activities. This gun was possessed by defendant for his protection and the protection of his drugs and money and was present to further his drug trafficking activities." Rec. Doc. No. 18. p. 3. At his rearraignment, the Court specifically confirmed Vernon's understanding that he was pleading guilty to possessing a firearm in the furtherance of a drug trafficking crime as follows:

**THE COURT**: The gun was loaded and it was your gun; is that correct?
**THE DEFENDANT:** Yes, sir.
**THE COURT:** Do I understand correctly that the gun was used to protect your drug-dealing activities? Is that correct? Among other things; is that right?
**THE DEFENDANT:** Yes, sir.
**THE COURT:** You knew the gun and the drugs that were seized from the Tahoe were in the Tahoe; is that correct?
**THE DEFENDANT:** Yes, sir.
Rec. Doc. No. 36, p. 23.

Vernon his right of allocution[31] all relate to sentencing. Accordingly, these claims do not survive the waiver of his right to contest his sentence in post-conviction proceedings.

Vernon's claims relating to his counsel's ineffective assistance on his direct appeal survive the waiver, i.e., the claims that counsel failed to file Vernon's direct appeal, counsel failed to inform Vernon of his rights to appeal, counsel failed to discuss the process of appeal, counsel failed to communicate with Vernon about possible issues to be raised on appeal, counsel deprived Vernon of his direct appeal by failing to withdraw after Vernon's conviction, counsel's ineffective assistance caused Vernon's lack of notice of appeal deadlines, and counsel provided ineffective assistance on appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004); *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

## D. Direct Appeal

---

[31] *See United States v. Wenger*, 58 F.3d 280, 282-83 (7th Cir. 1995); *United States v. Ordonez-Mendoza*, 2009 WL 2915117, at *1 (10th Cir. Sept. 14, 2009). In addition, the Court actually afforded Vernon an opportunity for allocution, FED. R. CRIM. P. 32(i)(4)(A)(ii) requires that, "[b]efore imposing sentence, the court must... address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."
"The sentencing judge 'should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.'" *United States v. Echegollen-Barrueta*, 195 F.3d 786, 789 (5th Cir. 1999) (citing *United States v. Washington*, 44 F.3d 1271, 1276 (5th Cir. 1995)). During sentencing the Court addressed Vernon individually to afford him an opportunity to speak on his own behalf, as follows:

> **THE COURT:** I find the report to be uncontested and I adopt it as my own. Is there anything you would like to say on your client's behalf prior to sentencing? I note that we are dealing with mandatory minimums and a consecutive sentence with respect to Count 2 that's mandated by law.
> **MR. DAMICO:** That's correct. We have discussed that. Obviously, the guidelines would have been a lower amount. We were attempting to work with the government with regards to a 5K. It did not pan out. We are in hopes that perhaps some type of continued efforts might result in the possibility of a Rule 35, but at this point that's all we have, Your Honor.
> **THE COURT:** Is there anything that you would like to say in your own behalf, sir?
> **THE DEFENDANT:** No.
> **THE COURT:** I can't hear you.
> **THE DEFENDANT:** No, sir.

Rec. Doc. No. 18, p. 3.

"A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal." *Reinhart*, 357 F.3d at 525. A defendant must demonstrate both prongs of the *Strickland* test to establish ineffective assistance of counsel where counsel fails to file an appeal on behalf of a defendant. *Flores-Ortega*, 528 U.S. at 476-77 (citing *Strickland,* 466 U.S. at 688, 694). Under *Flores-Ortega*, counsel's representation is professionally unreasonable where (1) counsel disregards his client's specific request to file a notice of appeal (2) counsel fails to consult with the defendant "when there is reason to think that a rational defendant would want to appeal," or (3) counsel fails to consult with the defendant "where the defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 477, 480. To show prejudice, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Id*. at 484. The defendant does not need to demonstrate that he would have been able to raise meritorious issues on appeal. *Id.* at 477-78; *Tapp*, 491 F.3d at 266.

### a. Failure to File Defendant's Direct Appeal

First, Vernon argues that although the Court instructed his counsel to file an appeal on his behalf, his counsel failed to do so. Although Vernon stated at sentencing that he wanted to appeal, he also said that he no longer wished to be represented by his retained counsel and that he wanted to apply for court-appointed counsel.[32] The court instructed Vernon's retained

---

[32] After the Court informed Vernon of his right to appeal his sentence, Vernon indicated that he wanted to appeal and that he wanted court-appointed counsel, as follows:

> **THE DEFENDANT**: ... I want to appeal, but I don't want to pay no lawyer no more.
> **THE COURT**: In other words, you want a lawyer to represent you on appeal free of charge?
> **THE DEFENDANT**: Yes, sir. Yes, sir.
> **THE COURT:** Well, your counsel will go ahead and make sure that you get a form that you can execute and submit to the Court so the Court can determine whether you can proceed as a pauper and have counsel represent you on appeal. You can file a motion to have counsel represent you on appeal in forma pauperis, and if you qualify that will be done, okay?
> **THE DEFENDANT:** Yes, sir.
> **THE COURT:** So speak to your lawyer some more about that, but he will file a notice of appeal

counsel, Thomas Damico ("Damico"), to file Vernon's notice of appeal and prepare his pauper application.[33]

Vernon claims, "Judge Africk instructed Mr. Damico to file a direct appeal for me. He did not."[34] In an affidavit submitted by the government, Damico states that he prepared a notice of appeal and an application to proceed without prepayment of fees and affidavit.[35] The affidavit states that Damico met with Vernon at the Tangipahoa Parish Prison so that Vernon could sign the documents. Damico's affidavit also states that Vernon was provided a pre-addressed envelope and instructions to mail his request after completing the required affidavit.[36]

There is no need to rely on Damico's affidavit because, in Vernon's response to the government's opposition, Vernon concedes that Damico prepared the required documents for him and that Vernon mailed them himself.[37] Because Vernon concedes that Damico complied with the requests of the Court and his client, Vernon cannot demonstrate that Damico's actions fell below an objective standard of reasonableness under *Strickland* and *Flores-Ortega*.

In addition, Vernon cannot show actual prejudice and, therefore, he cannot meet the second prong of *Strickland*. *See U.S. v. Smith*, 2005 WL 1140642 at *1 (5th Cir. May 16, 2005)

---

for you if you decide you want to appeal –
**THE DEFENDANT**: I want to appeal.
**THE COURT**: – whether or not he believes you have meritorious grounds or not. He wants to appeal, so please make sure you file a notice and help him with the paper application, if you don't mind, and the motion to have an attorney appointed pending appeal so we can get that one out of the way. Okay?
**MR. DAMICO:** Thank you, Your Honor. Yes.
Rec. Doc. No. 37, p. 7-8.
[33] *Id.* at 7.
[34]Rec. Doc. No. 35, p. 6.
[35] Rec. Doc. No. 38, Gov Ex. A, p. 1.
[36] *Id.*
[37]Rec. Doc. No. 42, p. 3-4. Vernon asserts: "as stated [in the government's opposition], all of the documents had been prepared by counsel Damico, and all Vernon had to do was sign and mail the Notice of Appeal, Application to Proceed Without Prepayment of Fees and Affidavit to the Clerk of Court, in which the Movant promptly complied." *Id.* at 3.

(finding no prejudice where defendant's counsel may have failed to inform defendant of time limits for an appeal and defendant filed timely notice of appeal). In this case, Vernon preserved his right to appeal by filing a timely notice of appeal and pauper application.[38] When his pauper application was denied for failure to file a non-frivolous ground for appeal, Vernon was offered another opportunity to file a pauper application, seek court-appointed counsel, and obtain transcripts at government expense in the Fifth Circuit Court.[39] At this point, Vernon failed to pursue his appeal in a timely manner and it was dismissed for lack of prosecution.[40] The record demonstrates that Vernon's right to appeal was preserved by the timely filing of a notice of appeal and that Vernon lost his right to appeal through his own inaction, not the inaction of his attorney. Vernon cannot show prejudice because he cannot show counsel's deficient performance caused him to forfeit his appeal.

> ### b. Failure to Inform Defendant of Right to Appeal and
> ### Failure to Discuss Process of Appeal

Next, Vernon claims that "counsel clearly failed to adequately inform him of his rights to appeal, and the formality for which to initiate such appeal."[41] Because Vernon filed a timely notice of appeal, Vernon cannot show that his attorney's alleged deficient performance resulted in prejudice under the second prong of *Strickland.* In addition, Vernon does not allege any facts to support his claim that his counsel failed to inform him of his rights to appeal.[42] Vernon states elsewhere in his reply that his counsel provided him with the required paperwork for filing a notice of appeal, which contradicts his assertion that his counsel never discussed the formalities

---

[38] Rec. Doc. Nos. 25, 26.
[39] Rec. Doc. No. 38, Gov's Ex. B.
[40] Rec. Doc. No. 33.
[41] Rec. Doc. No. 42., p. 14.
[42] *Id.*

of filing an appeal.[43] The Court further notes that Vernon was informed of his right to appeal by the Court at both his rearraignment[44] and sentencing.[45]

### c. Failure to Communicate Possible Issues to be Raised on Appeal

Vernon argues that his counsel failed to communicate any possible issues to be raised on appeal.[46] As part of his plea agreement, Vernon waived his right to appeal his sentence, reserving only the right to bring a direct appeal of any sentence in excess of the statutory maximum.[47] Vernon's counsel cannot be considered deficient for failing to advise Vernon to raise claims that he knowingly and voluntarily waived. *United States v. Wilkes,* 20 F.3d 651, 655 (5th Cir. 1994).

### d. Failure to Withdraw as Counsel

Vernon argues that his counsel's failure to withdraw resulted in his appeal and pauper application being denied.[48] While the magistrate judge's order noted that,"throughout this proceeding, defendant was represented by retained counsel who has not moved to withdraw," the order is clear that Vernon's appeal was denied because Vernon did not identify any non-

---

[43] *Id.* at 3-4.

[44] Rec. Doc. No. 36, p. 18-19.

[45] Rec. Doc. No. 37, p. 5-6.

**THE COURT**: Finally, to the extent that after the waiver of appeal in the plea agreement ...[t]o the extent that there are other appellate rights left that you have, if you can't afford the cost of an appeal, the government will pay the cost of that appeal, including an attorney to represent you on appeal and the cost of any transcripts. Do you understand that?

**THE DEFENDANT**: You are saying I can appeal?

**THE COURT**: Yes, sir. To the extent that you have a right to appeal that you haven't waived – because I think I spoke about that with you during your rearraignment. If you can't afford the cost of an appeal, as well as an attorney to represent you on appeal along with the cost of the transcript, upon a properly filed application and the notice of appeal, the Court will go ahead and consider whether you should be able to proceed without paying any of those costs. Do you understand that?

**THE DEFENDANT**: Yes, sir.

*Id.*

[46] *Id.* at 14.

[47] Rec. Doc. No. 17, p. 2.

[48] Rec. Doc. No. 34, p. 6.

frivolous grounds for appeal. The order states, "[b]ecause defendant fails to identify any non-frivolous grounds for appeal, defendant's motion to proceed on appeal IFP is denied."[49]  The order observes in a footnote that "[w]ith the exception of claims regarding the imposition of a sentence in excess of the statutory maximum, defendant waived his right to appeal as part of his plea agreement with the government."[50]  The denial of Vernon's appeal was due to Vernon's failure to follow the Fifth Circuit's directions and not the failure of counsel to withdraw. Vernon was offered the right to appeal, but he forfeited that right.

### e. Lack of Notice of Court of Appeals Deadline

As part of his ineffective assistance of counsel claim, Vernon asserts that he did not receive the letter from the Fifth Circuit Clerk of Court informing him of the necessary steps and deadlines necessary to pursue his appeal.[51] Vernon contends, "[i]f the letter was actually mailed to Vernon from the Fifth Circuit of Appeals, the letter was either lost in the mail or was deliberately withheld from him by prison officials."[52] Vernon does not explain how his attorney's deficient performance prevented him from receiving the letter. Vernon, therefore, cannot meet the deficient performance prong of an ineffective assistance of counsel claim.

### f. Ineffective Assistance of Counsel on Appeal

Vernon claims ineffective assistance of counsel on appeal. Vernon argues that "his retained counsel failed to adequately prepare the appropriate documents in order for him to initiate his first direct appeal from the Judgment of Conviction, before withdrawing at this most

---

[49] Rec. Doc. No. 32.
[50] *Id.* at n.1.
[51] Rec. Doc. No. 42, p. 9.
[52] *Id.* The letter from the United States Court of Appeals Fifth Circuit Clerk of Court
  is addressed to Vernon at the Federal Correctional Institute, Beaumont- Medium, and Vernon does not
  allege that he was at a different address at the time. *Id.*; Rec. Doc. No. 38, Gov. Ex. B, p. 1.

critical stage."[53] However, it is not reasonable for Vernon to expect his attorney to represent him on appeal when Vernon stated on the record at sentencing that he no longer wanted his attorney to represent him, and the Court instructed Damico to assist Vernon for the limited purpose of filing a notice of appeal and pauper application.[54] Further, Vernon argues repeatedly that he no longer wanted to retain Damico after his conviction. For example, in his response to the Government's opposition Vernon says, he "specifically expressed to the court and to counsel on numerous occasions... [that] he could no longer afford counsel's services [and] was completely dissatisfied with counsel's performance..."[55] Because the record is clear that Vernon did not want Damico to represent him on appeal, he cannot successfully claim ineffective assistance of counsel on appeal.

Accordingly,

**IT IS ORDERED** that the motion to vacate sentence and conviction pursuant to 28 U.S.C. § 2255 filed by defendant, Jimiyu Vernon, is **DENIED** and that Vernon's petition for post-conviction relief is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 29, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[53]Rec. Doc. No. 34, p. 7.
[54]Rec. Doc. No. 37, p. 7-8.
[55]Rec. Doc. No. 34, p. 8.